UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.S1 4:20CR22 MTS(SPM) |
| | ) | |
| DEOMAN REEVES, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

In accordance with the Memorandum Opinion filed herein,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Sever Count Fourteen (Doc. 332) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that Defendant's Motion to Suppress Any and All Location Data (Doc. 333) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that Defendant's Motion to Suppress Statements (Doc. 334) be **DENIED**.

The parties are advised that they have **fourteen (14)** days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure

to file timely objections may result in a waiver of the right to appeal questions of fact.  *See Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

**IT IS HEREBY ORDERED** that Defendant's Motion for Disclosure of Expert Witnesses (Doc. 279) is **DENIED, as moot**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Disclosure of Impeaching Information (Doc. 280) is **DENIED, as moot**.

**IT IS FURTHER ORDERED** that Defendant's Motion for In-Camera Review of Purported *Jencks* (Doc. 330) is **DENIED**.

**IT IS FINALLY ORDERED** that Defendant's Motion for Written Proffer and Pre-Trial Determination of Admissibility of Co-Conspirator's Statements (Doc. 331) is **DENIED.**

Trial in this case will be set before the **Honorable Matthew T. Schelp**, by separate order.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated: March 27, 2023.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.S1 4:20CR22 MTS(SPM) |
| | ) | |
| DEOMAN REEVES, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

All pretrial matters in this case were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C.§636(b). There are currently five contested pretrial motions pending before the undersigned.[1] For the reasons stated in below, each of Reeves' pending pretrial motions lack merit and should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Deoman Reeves is one of four defendants charged with offenses related to fentanyl trafficking. The original indictment was returned on January 9, 2020, and Reeves made his initial appearance on January 14, 2020. Reeves was arraigned on January 24, 2020, and the case was designated as complex on September 9, 2020,

---

[1] There were two additional motions pending at the time of the evidentiary hearing. *See* Docs. 279 & 280. However, after the evidentiary hearing, Reeves' counsel advised the Court that Reeves' pretrial Motion for Disclosure of Expert Witnesses (Doc. 279) and Motion for Disclosure of Impeaching Information (Doc. 280) had been resolved by the parties. As such, those motions will be denied as moot.

due in part to an anticipated superseding indictment that the United States expected would include one or more death-eligible counts. *See* Doc. 81. The superseding indictment was returned on December 23, 2020, charging Reeves with possession of a firearm in furtherance of drug trafficking resulting in death (Count 14), a charge for which the maximum penalty is death.[2]

On September 2, 2021, Reeves filed a notice of intent to not file pretrial motions and the case was set for trial on January 18, 2022, before United States District Judge E. Richard Webber. *See* Docs. 177, 179 & 201. Reeves subsequently petitioned the Court to file pretrial motions, and, on July 1, 2022, Judge Webber re-referred pretrial matters to the undersigned. *See* Doc. 289. Beginning on November 16, 2022, through November 28, 2022, Reeves filed five pretrial motions: (i) Motion for In-Camera Review of Purported *Jencks* (Doc. 330); (ii) Motion for Written Proffer and Pre-Trial Determination of Admissibility of Co-Conspirator's Statements (Doc. 331); (iii) Motion to Sever Count Fourteen (Doc. 332); (iv) Motion to Suppress Any and All Location Data (Doc. 333); and (v) Motion to Suppress Statements (Doc. 334).

On December 12, 2022, the United States filed an omnibus response opposing Reeves' pretrial motions. (Doc. 336). On December 19, 2022, the Court

---

[2] The statutory penalty includes death; however, the United States certified that it will not seek the death penalty. *See* Doc. 95.

held an evidentiary hearing on Reeves' suppression motions and, at the request of the parties, agreed to rule on the remaining motions based upon the parties' written submissions. At the suppression hearing, the United States presented the testimony of ATF Special Agent, Andrew Muench, who testified about the circumstances surrounding Reeves' post-arrest statement and each of the warrant applications and warrants challenged by Reeves. The United States also admitted nine exhibits into evidence, including the warrants and supporting materials challenged by Reeves. Reeves did not offer any additional evidence but cross-examined Agent Muench.

At the hearing, counsel for Reeves requested, and was granted, additional time to file supplemental briefs. The United States was granted time to file a responsive brief if deemed necessary. On December 29, 2022, Reeves filed a post-hearing brief and on December 30, 2022, the United States filed its response. All pretrial matters are now ready for a ruling and, after carefully considering the evidence presented by the parties and the parties' written submissions, the undersigned makes the following findings of fact and conclusions of law.

## I.    MOTION FOR *IN-CAMERA* REVIEW OF JENCKS ACT MATERIAL (DOC. 33)

Reeves' motion for *in-camera* review appears to seek an order requiring the United States to provide the Court with early production of materials pursuant to the Jencks Act so that the Court can conduct an *in-camera* review of those

materials to determine whether any of the disclosed documents should be turned over to the defense pursuant to *Brady v. Maryland.*

The Jencks Act, Title 18, United States Code, section 3500, provides, in relevant part:

> (a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection **until said witness has testified on direct examination in the trial of the case**.
>
> (b) **After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified**. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

18 U.S.C. § 3500 (emphasis added).

Reeves' motion for an *in-camera* inspection or review of "purported" Jencks Act material fails, first, because the language of the Jencks Act is unambiguous – it requires the United States to produce a "statement or report ... made by a Government witness" only "[a]fter [the] witness called by the United States has testified on direct examination." It is well-settled law in the Eighth Circuit and this Court that "[a]lthough in many cases the government freely discloses Jencks Act material to the defense in advance of trial, contrary to [defendant's] suggestion . . .,

the government may not be ***required*** to do so." *United States v. Wilson*, 102 F.3d 968, 971-72 (8th Cir. 1996) (emphasis added) (internal citation omitted). *See also United States v. White*, 750 F.2d 726, 729 (8th Cir. 1984) (same); *United States v. Green*, 151 F.3d 1111, 1115 (8th Cir. 1998) (same).

In addition, a defendant seeking an *in-camera* inspection of Jencks Act material must make a "colorable claim" that documents sought are statements within the meaning of the Jencks Act. *United States v. Price*, 542 F.3d 617, 622 (8th Cir. 2008). *See also United States v. Willis*, 997 F.2d 407, 413–14 (8th Cir.1993) (holding that the district court did not err in refusing to conduct an *in-camera* inspection where the defendant "failed to raise a colorable claim that the FBI [reports17 that he [sought were] 'statements' for purposes of the Jencks Act"). Reeves' motion is oddly silent on what specific "statements" or "reports" he suspects may be in the United States' possession that might constitute Jencks Act material the United States could ultimately be obligated to produce at trial. Indeed, Reeves' motion does not appear to be focused on specific statements at all. Instead, Reeves' motion seems to suggest that the Court should order the United States to figure out what materials in its possession may potentially fall under the Jencks Act and then produce all such materials to the Court so the Court can wade through them to determine if any of the materials constitute Brady. Reeves' request smacks of a fishing expedition that lacks any legal support or factual justification.

Without any citing any legal authority in support, Reeves also appears to contend that *Brady* and its progeny and Fed. R. Crim. P. 5(f) require early disclosure and an *in-camera* review of purported Jencks Act material. The Court will address each of these arguments in turn.

### A. *BRADY* OBLIGATIONS

Under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972), the United States must disclose evidence favorable to the defendant and must disclose impeachment information. "The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. Also, "[w]hen the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within his general rule." *Giglio,* 405 U.S. at 154. In other words, the United States' disclosure obligations under *Brady* "encompasses both substantive exculpatory evidence and evidence that might be valuable in impeaching government witnesses.'" *United States v. Keys*, 721 F.3d 512, 520 (8th Cir. 2013) (citing *United States v. Livingstone*, 576 F.3d 881, 884 (8th Cir.2009)).

"In the typical case where a defendant makes only a general request for exculpatory material under *Brady v. Maryland*, [the prosecuting entity] … decides

which information must be disclosed. Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final." *United States v. Pou*, 953 F.2d 363, 366 (8th Cir. 1992) (internal citation and quotation omitted). A defendant may (as Reeves has done here) request that the Court inspect documents for potential *Brady* material*, in-camera*. However, a defendant is not entitled to an in-camera review by the Court when, as in this case, the defendant fails to present anything other than speculation that the documents he wants inspected may contain *Brady* material. *United States v. Jewell*, 614 F.3d 911, 926 (8th Cir. 2010) (holding the district court did not abuse its discretion when it refused to conduct an *in-camera* review of alleged Brady material because the defendant did not present anything other than "mere speculation" that the documents he wanted the court to inspect contained Brady material).

As to the timing of *Brady* disclosures, the well-established rule in the Eighth Circuit is that "*Brady* does not require pretrial disclosure, and due process is satisfied if the information is furnished before it is too late for the defendant to use it at trial." *United States v. Szczerba*, 897 F.3d 929, 941 (8th Cir. 2018) (internal citation and quotation omitted). *See also, United States v. Manthei*,979 F.2d 124, 127 (8th Cir. 1992) ("The Eighth Circuit has held that Brady is only violated if

evidence is discovered, after the trial, of information which had been known to the prosecution but unknown to the defense.").

Indeed, the Eighth Circuit has declined to find *Brady* violations where the government made disclosures as little as one day prior to trial. *See, United States v. Heppner*, 519 F2d 744, 750 (8th Cir. 2008) ("None of appellants' Brady claims have merit. The government disclosed the FBI investigation report the day before trial, so appellants had the information in time to use it at trial.") Even "[a] mid-trial disclosure violates *Brady* only if it comes too late for the defense to make use of it." *United States v. Tyndall*, 521 F.3d 877, 882 (8th Cir. 2008) (internal citation omitted).

In this case, Reeves' motion for an in-camera review by the Court fails because Reeve has failed to demonstrate, beyond mere speculation, that the United States is in possession of potentially exculpatory information. Reeves has admitted he received and reviewed voluminous paper discovery and hundreds of gigabytes of electronically stored information. However, Reeves has not identified any specific information he suspects may be in the United States' possession that has not already been disclosed and might aid in his defense. The United States has denied that it is aware of any information in its possession that could reasonably be interpreted as exculpatory to Reeves. *See* Doc. 336, at p. 19. The United States has also committed to producing to Reeves any impeaching materials that relate to

testifying witnesses, if they exist, at a time early enough so that it may be used effectively at trial. *See* Doc. 336, at p. 20. "Criminal defendants have no right in noncapital cases to require disclosure of the list of government witnesses under Fed.R.Crim.P. 16(a)." *United States v. White*, 750 F.2d 726, 728 (8th Cir. 1984); *see also United States v. Hancock*, 441 F.2d 1285, 1286 (5th Cir. 1971) (court rejected argument that government violated a defendant's Fifth and Sixth Amendment rights when it did not disclose a witness list and concluded that a ruling on this request was for the trial court).

In sum, Reeves has failed to demonstrate that *Brady* requires the United States to make the requested disclosures at this juncture in the case.

## B.  FED. R. CRIM. P. 5(F)

On October 21, 2020, the President signed into law the Due Process Protections Act (DPPA) which amends Federal Rule of Criminal Procedure 5. Under Rule 5(f), in all criminal proceedings, federal courts are now required to "issue an oral and written order to prosecution and defense counsel that confirms the disclosure obligation of the prosecutor under *Brady* ... and its progeny, and the possible consequences of violating such order under applicable law." *United States. v. Garreau*, 558 F. Supp. 3d 794 (Dist. S.D. 2021). The statute further instructs that each court prepare an order implementing the prosecution's disclosure obligation. The statute reminds the United States of its disclosure obligations under

*Brady* and Giglio; however, it does not change the nature or timing of those obligations.

Reeves' reliance on Fed. R. Crim. P. 5(f) is misplaced. This Court has already ordered the United States to comply with its *Brady* obligations, pursuant to Fed. R. Crim. P. 5(f) and Reeves has offered no argument or evidence to suggest that the United States either has not complied or will not comply with those obligations. Indeed, as set out above, the United States has committed to timely compliance with its obligations under *Brady* and its progeny.

In sum, for the foregoing reasons, Reeves' motion in-camera review of purported Jencks Act material will be denied.

## II.   MOTION FOR WRITTEN PROFFER AND PRE-TRIAL DETERMINATION OF ADMISSIBILITY OF CO-CONSPIRATOR'S STATEMENTS (DOC. 331)

Reeves' Motion for Written Proffer and Pre-Trial Determination of Admissibility of Co-Conspirator Statements seeks two forms of relief. First, Reeves asks the Court to order the United States to submit a written proffer at least thirty (30) days before trial setting forth the basis for admission of co-conspirator statements. Second, Reeves asks the Court to hold a preliminary or mini-hearing prior to trial on the admissibility of the statements. *See* Doc. 331, at p. 4. Reeves cites Fed. R. Evid. 801(d)(2)(e), Fed. R. Evid. 104(a), and the Sixth Circuit Court of Appeals' decision in *United States v. Enright*, 579 F.2d 980 (6th Cir. 1978) in support.

In its response, the United States agreed that Reeves is entitled to a determination by the trial judge as to the admissibility of co-conspirator statements and notes that it intends to make a motion before the trial judge for a preliminary ruling that co-conspirator statements are admissible. *See* Doc. 336, at p. 20-21. However, the United States' Response outlines a procedure for making the admissibility determination that is different than the procedure argued for by the defense. *Id.* at p. 21. The United States also pointed out that Rule 801(d)(2)(e) is "a foundational inquiry for the trial court and is not a proper matter for the Court's consideration at this stage of the proceedings." *Id.* at p. 20. This Court agrees.

Both the substantive question of whether co-conspirator statements are admissible and the procedural issue of how admissibility should be determined are decision best left to the discretion of the trial judge after the legal and factual issues in the case have been far better focused and narrowed than they are at this juncture. This motion is premature and will be denied without prejudice to refiling before the trial judge at the appropriate time.

III.   **MOTION TO SEVER COUNT FOURTEEN (DOC. 332)**

Reeves is charged in the superseding indictment with one count of conspiracy to distribute 40 grams or more of fentanyl (Count 1); five counts of possession with intent to distribute fentanyl (Counts 2, 3, 4, 8 and 11); two counts of possession of a firearm in furtherance of drug trafficking (Counts 5 and 9); two

counts of felon in possession of a firearm (Counts 6 and 10); and one count of possession of a firearm in furtherance of drug trafficking resulting in death (Count 14). Reeves has moved this Court, pursuant to Fed. R. Crim. P. 14(a), to sever Count 14 from the remaining ten counts with which he is charged. Reeves argues that because Count 14 involves an alleged murder, severance is necessary to avoid undue prejudice at trial. In response, the United States argues, among other things, that joinder is appropriate, and severance is not warranted, because the events alleged in Count 14 are sufficiently related to the events alleged in the remaining counts that no prejudice would result from a joint trial of the offenses and because any potential prejudice can be adequately addressed at trial with limiting instructions to the jury.

Rule 8(a) of the Federal Rules of Criminal Procedure permits joinder of two or more offenses in an indictment "if the offenses charged ... are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Fed.R.Crim.P. 8(a). The Eighth Circuit has recognized that joinder of offenses is the favored practice, *United States v. Humphreys*, 982 F.2d 254, 259 (8th Cir.) cert. denied, 510 U.S. 814 (1993), and Rule 8 should be broadly construed in favor of initial joinder. *United States v. Johnson,* 462 F.3d 815 (8th Cir. 2006).

Rule 14(a) provides relief from joinder, even when joinder was appropriate initially under Rule 8(a). *United States v. Robaina*, 39 F.3d 858, 861 (8th Cir.1994). "If the joinder of offenses ... in an indictment ... appears to prejudice a defendant ... the court may order separate trials of counts ... or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). "Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts." *Zafiro v. United States*, 506 U.S. 534, 541 (1993). A denial of a severance motion is reviewed for an abuse of discretion, and only reversed when the denial resulted in severe prejudice to the defendant. *United States v. Taken Alive*, 513 F.3d 899, 902 (8th Cir.2008).  No prejudice results from the refusal to sever when evidence of one charge would be admissible in a separate trial on the other. *United States v. Steele*, 550 F.3d 693, 702 (8th Cir.2008).

There is a strong presumption against severing properly joined counts. *United States v. Ruiz,* 412 F.3d 871, 886 (8th Cir.2005). This is because the rules regarding joinder and severance "are designed 'to promote economy and efficiency and to avoid a multiplicity of trials, [so long as] these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial.'" *Zafiro*, 506 U.S. at 540 (*quoting Bruton v. United States*, 391 U.S. 123, 131 n.6 (1968)). The Eighth Circuit has explained that these rules should be construed liberally in favor of joinder, *see United States v. Johnson,* 462 F.3d 815, 821 (8th Cir. 2006),

and has held that "'[o]nly in an unusual case ... will the prejudice resulting from a joint trial be substantial enough to outweigh the general efficiency of joinder.'" *United States v. Huggans*, 650 F.3d 1210, 1221 (8th Cir. 2011) (*quoting United States v. Kirk*, 528 F.3d 1102, 1107 (8th Cir. 2008)).

Substantial prejudice from a joint trial may be shown where, for example, "'the jury might use evidence of one crime to infer guilt on the other [crime] or that the jury might cumulate the evidence to find guilt on all crimes when it would not have found guilt if the crimes were considered separately.'" *Id. (quoting United States v. Davis*, 103 F.3d 660, 676 (8th Cir. 1996)). *See also United States v. Reynolds*, 720 F.3d 665, 669 (8th Cir. 2013) ("Severe prejudice occurs when a defendant is deprived of an appreciable chance for an acquittal.") (citation and internal quotations omitted). On the other hand, the joinder of offenses for trial is proper when evidence regarding one crime is probative and admissible regarding another crime, such as, for example, under Fed. R. Evid. 404(b). *Id.* ("[A] defendant does not suffer any undue prejudice by a joint trial if the evidence is such that one crime would be probative and admissible at the defendant's separate trial for the other crime.") (*quoting Davis*, 103 F.3d at 676). *See also United States v. Brown*, 653 F.3d 656, 662 (8th Cir. 2011); *United States v. Taken Alive*, 513 F.3d 899, 903 (8th Cir. 2008).

Reeves has not demonstrated that substantial prejudice would result from a joint trial of Count 14 and the remaining counts. Notwithstanding Reeves' assertions to the contrary, the events alleged in Count 14 and the remaining counts in the superseding indictment are not significantly separated in terms of dates or locations; the events also involve similar conduct (fentanyl and other drug trafficking and firearm possession); and it appears that there is sufficient overlap of issues such that evidence of "one crime would be probative and admissible at the defendant's separate trial for the other crime." *Reynolds*, 720 F.3d at 669.

Finally, to justify severance, Reeves must show risk of severe prejudice. *See United States v. Geddes*, 844 F.3d 983, 988 (8th Cir. 2010) (finding no abuse of discretion in refusing the sever a firearm charge from a sex trafficking charge) (*citing United States v. Erickson*, 610 F.3d 1049, 1055 (8th Cir. 2010)) Although Reeves vaguely refers to a risk of prejudice, he has not identified any unique or undue prejudice that he would face if forced to defend against all charges in a single trial. Any risk of prejudice that may arise can be addressed with relatively standard jury instructions. *See United States v. Mann*, 685 F.3d 714, 718 (8th Cir. 2012). The Eighth Circuit pattern jury instructions make it clear that when a defendant is charged with separate crimes the jury must consider each count separately and return a separate verdict for each count. *See*, Eighth Circuit Manual of Model Criminal Jury Instructions 3.06. It is presumed that jurors will follow the

Court's instructions. *Zafiro v. United States*, 506 U.S. 534, 573 (1993).

Defendant's motion to sever should be denied because joinder is appropriate and

there appears to be no risk of severe prejudice that cannot be addressed with a

standard jury instruction.

## IV.   MOTION TO SUPPRESS LOCATION DATA (DOC. 333)

Investigators in this case obtained four search warrants that authorized

agents to obtain precision location information ("PLW") from cell phone providers

and to use a cell-site simulator ("CSS warrant") to obtain location information for

Reeves' cell phone numbers (314) 899-3855 and (314) 369-0583. Reeves has

moved to suppress the location data and all evidence derived from the location

data.

The following factual findings are based upon (i) the testimony of Special

Agent Muench at the evidentiary hearing, which I found to be credible,

(ii) documentary and other evidence submitted at the hearing, and (iii) all

reasonable inferences derived from both testimonial and documentary evidence.

### A. FACTUAL FINDINGS

Andrew Muench is a Special Agent with the United States Bureau of

Alcohol Tobacco and Firearms ("ATF") with about five years of experience with

the ATF. Before becoming an ATF Special Agent, he was a University City Police

Officer for four years.

On October 11, 2019, Agent Muench appeared before the Honorable Federick R. Buckles, United States Magistrate Judge (on recall) for this District and submitted an affidavit in support of an application for a warrant and court order requiring Sprint and other telecommunications service providers to disclose precision location information, cell tower records and other telecommunication data for cell phone number (314) 899-3855. *See* Govt. Ex. 1. The application also sought an order authorizing the use of a pen register and trap and trace for the target cell phone number. *Id.*[3] In making the application Agent Muench attested that he believed the search would lead to evidence and/or fruits of a crime, and/or property designed for use in committing a crime; namely felon in possession of a firearm.

Among other things, the affidavit described ATF's investigation into a shooting that occurred in University City on September 26, 2019, in which Reeves was identified as the shooter by eyewitnesses. The affidavit also described how

---

[3] This request was made by a separate application signed by AUSA Paul D'Agrosa. As outlined AUSA D'Agrosa's application, cell site simulators fall within the statutory definition of a pen-trap devices. (See Gov't Exh. 1) By statute, pen-trap applications must normally be submitted to a judge and signed by "an attorney for the Government" under penalty of perjury. See 18 U.S.C. § 3122(b). The statutory rules authorizing courts to issue pen-trap orders do not require a showing of probable case. Rather, § 3122 requires only that the applicant certify that "the information likely to be obtained is relevant to an ongoing criminal investigation." § 3122(b)(2); see also Smith v. Maryland, 442 U.S. 735 (1979) (holding that installation and use of a pen register was not a Fourth Amendment search). In this case, however, the application was accompanied by a request for a warrant pursuant to Rule 41, providing an additional layer of constitutional protection because it arguably remains an open question whether the use of a cell site simulator to identify a phone number constitutes a "search" for Fourth Amendment purposes.

Reeves contacted police using the target telephone to find out what law enforcement knew about the shooting. The affidavit described Reeves' criminal history, including that Reeves was a convicted felon with prior felony convictions for assault, unlawful use of a weapon, armed criminal action and unlawful possession of a firearm. The affidavit also detailed the steps investigators later took to confirm that Reeves owned and was actively using the target phone.

At the evidentiary hearing, Agent Muench testified that, apart from his affidavit, no other information was provided to Judge Buckles. Agent Muench was placed under oath and swore to the truthfulness of the information in the application and affidavit and both Judge Buckles and Agent Muench signed the affidavit and application. Judge Buckles issued the warrant authorizing and ordering, among other things, that Sprint and other telecommunications service providers to disclose precision location information, cell tower records, and other telecommunication data for cell phone number (314) 899-3855.

At the hearing, Agent Muench testified that he relied on the warrant in serving it on the service provider for the phone number on the warrant and obtained data from the cell phone provider. On March 1, 2020, Agent Muench signed a sworn Return and described the "[i]nventory of the property taken" as "Precision Location Information for 314-899-3855." *See* Govt. Ex. 1.

On November 1, 2019, Agent Muench appeared before the undersigned United States Magistrate Judge and submitted an affidavit in support of an application for a warrant and court order authorizing the ATF to use, as an electronic surveillance technique, a cell-site simulator to determine the location of cellular device number (314) 899-3855. [4] *See* Govt. Ex. 2. In making the application Agent Muench attested that he believed the search would lead to evidence and/or fruits of a crime, property designed for use in committing a crime, and/or a person to be arrested for a crime; namely felon in possession of a firearm and possession with intent to distribute controlled substances.

Among other things, the affidavit described ATF's investigation into the September 26, 2019, shooting in University City which led investigators to open an investigation into Reeves as the suspected shooter. The affidavit also described how, with the help with cooperating witnesses and confidential informants, the investigation evolved and expanded into an investigation of narcotics distribution by Reeves and others; the use of the target cellular device by Reeves and others to

---

[4] AUSA Paul D'Agrosa made a separate application to the Court in recognition of the United States' position that cell site simulators fall within the statutory definition of a pen-trap devices. (See Gov't Exh. 2). By statute, pen-trap applications must normally be submitted to a judge and signed by "an attorney for the Government" under penalty of perjury. See 18 U.S.C. § 3122(b). The statutory rules authorizing courts to issue pen-trap orders do not require a showing of probable case. Rather, § 3122 requires only that the applicant certify that "the information likely to be obtained is relevant to an ongoing criminal investigation." § 3122(b)(2); *see also Smith v. Maryland*, 442 U.S. 735 (1979) (holding that installation and use of a pen register was not a Fourth Amendment search). However, in this case, because the application was accompanied by a request for a warrant pursuant to Rule 41, there is an additional (even if, arguably, unnecessary) layer of constitutional protection.

distribute narcotics in the St. Louis area; Reeves' implication in a second murder that allegedly occurred on October 21, 2019; and Reeves' status as a suspected narcotics trafficker who, with prior felony convictions, was engaging in gun violence to protect his turf and in retaliation for shootings from rival traffickers. Finally, the affidavit outlines difficulties investigators were facing in identifying Reeves' residence and stash houses given the type of structure in which Reeves resided and limitations of physical surveillance.

At the evidentiary hearing, Agent Muench testified that he did not provide this Court with any information outside the affidavit. Agent Muench was placed under oath and swore to the truthfulness of the information in the application and affidavit and both the undersigned and Agent Muench signed the affidavit and application. The undersigned issued the warrant authorizing and ordering, among other things, the use of a cell site simulator to track the location of Reeves' cell phone number (314) 899-3855.

At the hearing, Agent Muench testified that he relied on the warrant in serving it on the service provider for the phone number on the warrant and obtained data from the cell phone provider. On March 1, 2020, Agent Muench signed a sworn Return and described the "[i]nventory of the property taken" as "Cell Site Simulator Information for 314-899-3855." *See* Govt. Ex. 2.

On December 6, 2019, Agent Muench appeared before the Honorable Patricia L. Cohen, United States Magistrate Judge for this District and submitted an affidavit in support of an application for a warrant and court order requiring Sprint and other telecommunications service providers to disclose precision location information, cell tower records and other telecommunication data for cell phone number (314) 369-0583. *See* Govt. Ex. 3. The application also sought an order authorizing the use of a pen register and trap and trace for the target cell phone number. *Id.*[5] In making the application Agent Muench attested that he believed the search would lead to evidence and/or fruits of a crime, and/or property designed for use in committing a crime; namely felon in possession of a firearm and possession with intent to distribute controlled substances.

Among other things, the affidavit detailed the ATF's investigation into Reeves between September 26, 2019, through the date of the application. In addition to details provided in the earlier affidavits, the affidavit described how, in November 2019, investigators conducted controlled/undercover purchases of fentanyl from Reeves using both the previous target cellular device, (314) 899-3855 and the instant target cellular device, (314) 369-0583. The affidavit detailed

---

[5] Like the request referenced in note 2, *supra,* this request was made by a separate application signed by AUSA Paul D'Agrosa. As outlined AUSA D'Agrosa's application, cell site simulators fall within the statutory definition of a pen-trap devices. (See Gov't Exh. 3) and, as such, must normally be submitted to a judge and signed by "an attorney for the Government" under penalty of perjury. See 18 U.S.C. § 3122(b).

how investigators determined that Reeves was actively using the target phone for his illicit activities and described in detail how the requested electronic surveillance would be conducted.

At the evidentiary hearing, Agent Muench testified that, apart from information in his affidavit, no other information was provided to Judge Cohen. Agent Muench was placed under oath and swore to the truthfulness of the information in the application and affidavit and both Judge Cohen and Agent Muench signed the affidavit and application. Judge Cohen issued the warrant authorizing and ordering, among other things, that Sprint and other telecommunications service providers to disclose precision location information, cell tower records, and other telecommunication data for cell phone number (314) 369-0583.

At the hearing, Agent Muench testified that he relied on the warrant in serving it on the service provider for the phone number on the warrant and obtained data from the cell phone provider. On February 19, 2020, Agent Muench signed a sworn Return and described the "[i]nventory of the property taken" as "Precision Location Information for 314-369-0583." *See* Govt. Ex. 3.

 On December 6, 2019, Agent Muench appeared before the Honorable Patricia L. Cohen, United States Magistrate Judge for this District and, in addition to the precision location warrant discussed above, submitted an affidavit in support

of an application for a warrant and court order authorizing ATF to use, as an

electronic surveillance technique, a cell-site simulator to determine the location of

cellular device number (314) 369-0583. [6] *See* Govt. Ex. 4.

The affidavit in support of the request for authority to use a cell-site

simulator, contained a description of the ATF's investigation into Reeves that was,

substantively, identical to the description contained in the affidavit submitted in

support of the precision location warrant. In addition, the affidavit described the

location to be searched as "Target cellular device assigned phone number (314)

369-0583 whose wireless provider is SPRINT and whose listed subscriber is

unknown." The affidavit further explained that the use of the cell-site simulator

would help agents determine the location of the target cellular device and

described how the cell-site simulator would be used to locate the target device.

At the evidentiary hearing, Agent Muench testified that, apart from

information in his affidavit, no other information was provided to Judge Cohen.

Agent Muench was placed under oath and swore to the truthfulness of the

---

[6] AUSA Paul D'Agrosa made a separate application to the Court in recognition of the United States' position that cell site simulators fall within the statutory definition of a pen-trap devices. (See Gov't Exh. 4). By statute, pen-trap applications must normally be submitted to a judge and signed by "an attorney for the Government" under penalty of perjury. See 18 U.S.C. § 3122(b). The statutory rules authorizing courts to issue pen-trap orders do not require a showing of probable case. Rather, § 3122 requires only that the applicant certify that "the information likely to be obtained is relevant to an ongoing criminal investigation." § 3122(b)(2); *see also Smith v. Maryland*, 442 U.S. 735 (1979) (holding that installation and use of a pen register was not a Fourth Amendment search). However, in this case, because the application was accompanied by a request for a warrant pursuant to Rule 41, there is an additional (even if, arguably, unnecessary) layer of constitutional protection.

information in the application and affidavit and both Judge Cohen and Agent Muench signed the affidavit and application. Judge Cohen issued the warrant authorizing and ordering, among other things, the use of a cell-site simulator to locate the device using cell phone number (314) 369-0583.

At the hearing, Agent Muench testified that he relied on the warrant in serving it on the service provider for the phone number on the warrant and obtained data from the cell phone provider. On February 19, 2020, Agent Muench signed a sworn Return and described the "[i]nventory of the property taken" as "Cell-Site Simulator Information for 314-369-0583." *See* Govt. Ex. 4.

## B. CONCLUSIONS OF LAW

Based on the foregoing factual findings, agents seized location data from Reeves' cellular phone numbers (314) 369-0583 and (314) 899-3855 pursuant to four separate search warrants issued on October 11, 2019, November 1, 2019, and December 6, 2019. The first two search warrants, issued on October 11th and November 1st, authorized agents to obtain precision location information ("PLW") and to use a cell-site simulator to obtain location information for phone number (314) 899-3855 ("CSS warrant"). The remaining two warrants, issued on December 6, 2019, authorized agents to obtain precision location information ("PLW") and to use a cell-site simulator to obtain location information for phone number (314) 369-0583 ("CSS warrant").

Reeves challenges the sufficiency of the foregoing warrants and argues location data evidence seized pursuant to the warrants must be suppressed. As such, the Court's analysis begins with a review of the warrants.

### 1. LEGAL STANDARD FOR REVIEW OF SEARCH WARRANTS

"Issuance of a search warrant must be supported by probable cause, which depends on whether, under the totality of the circumstances, there is a fair probability evidence of a crime will be found in a particular place." *United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016) (citing *United States v. Rodriguez*, 711 F.3d 928, 936 (8th Cir. 2013)). *See also Johnson v. United States*, 333 U.S. 10 (1948); *Warden v. Hayden*, 387 U.S. 294 (1967); *United States v. Keys*, 721 F.3d 512, 518 (8th Cir. 2013); Fed. R. Crim. P. 41.

Probable cause is "a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Probable cause may be found in hearsay statements from reliable persons, *Gates*, 462 U.S. at 245; in hearsay statements from confidential informants corroborated by independent investigation, *Draper v. United States*, 358 U.S. 307, 313 (1959); or in observations made by trained law enforcement officers, *McDonald v. United States*, 335 U.S. 451, 454 (1948). While these are some of the common ways in which probable cause is established, they are not all-inclusive.

Information contained in applications and affidavits for search warrants must be examined in the totality of the circumstances presented. *Gates*, 462 U.S. at 230. It is well-established that, when the issuing judge relies on the supporting affidavit to issue a search warrant, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (citations and quotations omitted); *see also United States v. Farlee*, 757 F.3d 810, 819 (8th Cir. 2014); *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995).

After a judicial officer has issued a warrant upon a finding of probable cause, that finding normally deserves great deference. *Gates,* 462 U.S. at 236. Thus, "[t]he affidavit should be examined under a commonsense approach that is not in a hypertechnical fashion." *Solomon,* 432 F.3d at 827 (citation and quotations omitted). *See also United States v. Ventresca,* 380 U.S. 102, 109 (1965); *Gladney,* 48 F.3d at 312 (explaining that "[a]ffidavits must be read in a common-sense and realistic fashion") (citations and quotations omitted). Therefore, when reviewing the issuance of a warrant, this Court "afford[s] great deference to the issuing judge's probable-cause determination, ensuring only that the judge had a substantial basis for concluding that a search warrant would uncover evidence of wrongdoing." *United States v. Petruk,* 929 F.3d 952, 959 (8th Cir. (citations and

quotations omitted; emphasis supplied), *cert denied,* 140 S. Ct. 510 (2019); *see also United States v. Daigle,* 947 F.3d 1076, 1081 (8th Cir. 2020 (citations and quotations omitted).

### 2. THE WARRANTS WERE SUPPORTED BY PROBABLE CAUSE

Based upon the facts contained within the four corners of the affidavits, and with due deference to the issuing judges, the Court finds that the PLW and CSS warrants for cell phone number (314) 899-3855 were supported by probable cause. The Court further finds that the PLW and CSS warrant for cell phone number (314) 369-0583 were also supported by probable cause. Specifically, Agent Muench's supporting affidavit for the October 11, 2019, PLW for cell phone number (314) 899-3855 established probable cause that (1) Reeves was a convicted felon; (2) Reeves was a suspect in a shooting, where he was identified by two victims and his vehicle described by witnesses; (3) A person who identified themselves as Deoman Reeves called the U. City Police using phone number (314) 899-3855; (4) That person asked questions and had a conversation with a police lieutenant about the shooting; (5) Reeve's cousin was stopped by police, operating Reeve's vehicle, which contained a firearm and bullet damage; and (6) commercial, open source database inquiries, Crime Matrix inquiries and social media searches confirmed that Reeves was using phone number (314) 899-3855 as his primary contact number. This provided more than a substantial basis to

conclude that Reeves was using cell phone (314) 899-3855 to commit the federal crime of felon in possession of a firearm and that the location information sought by the warrant would lead to evidence of those crimes.

In applying for a CSS warrant for phone number (314) 899-3855 on November 1, 2019, Agent Muench built upon the probable cause facts that supported the PLW. In addition to the information contained in the October 11th PLW application, the November 1st CSS warrant affidavit established probable cause that (1) Reeves was suspected in multiple shooting incidents, including a murder; (2) the most recent shooting in which Reeves was involved took place just ten days before the affidavit was provided to the Court—October 21, 2019; (3) the confession of a suspect that he was with Reeves when the victim was shot and killed on October 21st strongly implicated Reeves' involvement in the murder; (4) based upon the subject's statement, it appeared Reeves had a drug-related motive for the murder; (5) physical evidence corroborated the subject's statement; and (6) a confidential source had called Reeves' cell phone number (314) 899-3855 to arrange for the purchase of narcotics.

The PLW and CSS warrants issued on December 6, 2019, for phone number (314) 369-0583 were also supported by probable cause. The affidavits submitted by Agent Muench in support of those warrants built on earlier probable cause statements and further established that Reeves had changed his phone number to

(314) 369-0583. The affidavits included additional details implicating Reeves in the murder of D.A. on October 21, 2019, included details of Reeve's whereabouts gleaned from previous PLWs, and included specific details of Reeves' narcotic and gun distribution activities during October and November 2019.

Based upon the totality of the evidence contained in each affidavit, probable cause existed to support the issuance of the PLW and CSS warrant for phone number (314) 899-3855 and the PLW and CSS warrant for phone number (314) 369-0583.[7]

Even if a reviewing Court determines that the PLW and CSS warrants at issue were not supported by probable cause, Reeves' motion to suppress fails because the good faith exception under *Leon*, applies. *United States v. Leon,* 468 U.S. 897, 922 (1984). As the Eighth Circuit recognized in *United States v. Jackson*, 784 F.3d 1227, 1231 (8th Cir. 2015), there are four instances where the *Leon* good faith exception does not apply: (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the

---

[7] Reeves argues, in the alternative, that the PLW for phone number (314) 899-3855 and CSS warrant for phone number (314) 369-0583 lacked probable cause to connect Reeves to the phone numbers. *See* Doc. 333, at p. 10. That argument fails for the reasons set out in this section. Although Reeves did not challenge the existence of probable cause for either the CSS warrant for phone number (314) 899-3855 or the PLW for phone number (314) 369-0583, the Court notes that the affidavits filed in support of warrants for those phone numbers contain facts that are virtually identical to the facts attested to in the affidavits supporting the challenged warrants.

issuing judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid. *Id.* Reeves has not shown and based on the evidence of record, cannot show, that any of these exceptions apply here.

### 3. THE WARRANTS MET THE PARTICULARITY REQUIREMENT

Reeves argues the CSS warrant for (314) 369-0583 was facially invalid because it failed to identify with particularity the property to be searched or the things to be seized. *See* Doc. 333, at p. 6-8.[8]  The Fourth Amendment requires that search warrants be issued only upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Dalia v. United States*, 441 U.S. 238, 255 (1979) (internal quotations omitted). In *Dalia*, the Supreme Court explained that valid warrants "require only three things." *Id.* "First, warrants must be issued by neutral, disinterested magistrates." *Id.* (citations omitted). Second, the warrant may issue only upon a showing of "probable cause to believe that 'the evidence sought will aid in a particular apprehension or conviction' for a particular offense." *Id.*

---

[8]Although it is far from clear, this argument appears to be directed only to the CSS warrant for phone number (314) 369-0583. *See* Doc. 333, at p. 6-8 and Doc. 333-3.

(*quoting Warden v. Hayden*, 387 U.S. 294, 307 (1967)). Third, the warrant "must particularly describe the things to be seized as well as the place to be searched." *Id.* (citations and quotations omitted). Requiring particularity protects the citizens against general warrants. *See Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1972); *see also Ashcroft v. Al-Kidd*, 563 U.S. 731, 742-43 (2011) ("The principal evil of the general warrant was addressed by the Fourth Amendment's particularity requirement.").

"The test for determining the sufficiency of the description of the place to be searched is whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched." *United States v. Skarda,* 845 F.3d 370, 377 (8th Cir. 2016) (citation and internal quotations omitted). Further, if a court finds in hindsight that a warrant was overbroad, suppression may not be required. *See United States v. Szczerba*, 897 F.3d 929, 938 (8th Cir. 2018) (concluding that, although warrant was lacking in particularity, it "was not so obviously deficient that any reasonable officer would have known that it was constitutionally fatal" and that application of the exclusionary rule on the facts "would not result in appreciable deterrence of police misconduct") (citations omitted), *cert. denied*, 139 S. Ct. 1544 (2019).

As other courts in this district have recognized, Fed. R. Crim P. 41 sets out the requirements for what a search warrant must contain, and those requirements turn on the type of warrant being issued. *See United States v. Johnson,* S1-4:18CR565-1 CDP(JMB), 2020 WL 6049562 at *15 (EDMO Apr. 14, 2020). Rule 41(f)(1), which governs issuance of a warrant for searching and seizing a person or property, provides in relevant part:

> ***Except for a tracking device warrant***, the warrant must identify the person or property to be searched, identify any person or property to be seized, and designate the magistrate judge to whom it must be returned. . . .

Fed. R. Crim. P. 41(f)(1) (emphasis added).

Rule 41(f)(2)(C), which pertains to the issuance of tracking device warrants, provides in relevant part:

> A tracking device warrant must identify the person or property to be tracked, designate the magistrate judge to whom it must be returned, and specify a reasonable length of time that the device may be used. The time must not exceed 45 days from the date the warrant was issued . . . .
> The warrant must command the officer to:
> (i) complete the installation authorized by the warrant within a specified time no longer than 10 days;
> (ii) perform any installation authorized by the warrant during the daytime, unless the judge for good cause expressly authorizes installation at another time; and
> (iii) return the warrant to the judge designated in the warrant.

Fed. R. Crim. P. 41(f)(2).

As the factual findings and a review of the warrant make clear, the cell-site simulator warrant issued in this case specifically authorized investigators to use the cell-site simulator to track the location of Reeves' cell phone. It did not authorize the search of a person, property, or location. The Court recognizes that multiple courts have concluded that a cell-site simulator is not itself a "tracking device" such that, in all circumstances, law enforcement would be required to request the issuance of a tracking device warrant. *See In re Use of a Cell-Site Simulator to locate a Cellular Device,* 531 F. Supp. 3d 1, 6 (D. D.C. 2021). However, for purposes of evaluating the sufficiency of the description of the place to be searched and property or thing to be seized, the warrant that was issued in this case was more akin to a warrant for a tracking device than a warrant to search or seize a person or property. *See Johnson,* 2020 WL 6049562 at *15 (applying Fed. R. Crim. P. 41(f)(2)(C) to evaluate the sufficiency of a warrant authorizing the use of a cell-site simulator).

The cell-site simulator warrant in this case authorized the use of a cell-site simulator to track the location of Reeves' cell phone and, in doing so, complied with the particularity requirements outlined in Rule 41(e)(2)(C). Attachment A to the warrant identifies the person or property as Reeves and his cellular device. Attachment A also requires that the identification process begin within ten days of the issuance of the warrant. Attachment A further directs that the

identification process may last no more than 45 days. Finally, the cover sheet expressly authorizes the identification process to occur at any time, day, or night.

In the sum, the CSS warrants particularly described the place to be searched—namely, the location of Reeves' cell phone. As such, the undersigned finds that the cell-site simulator warrant in this case satisfied the relevant particularity requirements for the unique circumstances presented by using such devices to track Reeves and his cell phone. Therefore, Reeves is not entitled to the suppression of any evidence obtained pursuant to the cell-site simulator.

### 4.   THE WARRANT RETURNS COMPLY WITH RULE 41 AND ANY DEFICIENCIES DO NOT JUSTIFY SUPPRESSION

Reeves also urges this Court to suppress location evidence because, Reeves posits, the warrant return did not comply with Fed. R. Crim. P. 41, and he was prejudiced as a result. Specifically, Reeves argues that Rule 41 required agents to prepare an inventory of items and/or information gathered under the warrant and that, rather than preparing an actual inventory, agents instead stated only when the CSS was used. *See* Doc. 333, at p. 8. Reeves argues that, because of this deficiency, he was "left with no way of determining whether law enforcement's search exceeded the scope of the warrant" and "left completely unable to test the veracity of law enforcement's assertions that certain phone numbers were associated with him." *Id.* at p. 8-9.

The Court is not persuaded that the warrant returns violated Rule 41. As noted in the preceding section, Rule 41 provides for two types of search warrants—those directed at searching and seizing a person or property, including electronically stored information, and those directed at tracking devices. The type of return required by Rule 41 depends on the type of search warrant issued. Here, the evidence of record establishes that Agent Muench requested, and the Court issued search and seizure warrants. As such, pursuant to Fed. R. Crim. P. 41(f)(1), Agent Muench was required to note the exact date and time the warrant was executed and to prepare and verify an inventory of any property seized or, in the case seizure of electronically stored information, "the inventory may be limited to describing the physical storage media that were seized or copied [if any]." Fed. R. Crim. P. 41(f)(1)(A)-(D).

Based on the record before the Court, Agent Muench submitted a return to each issuing judge. *See* Govt. Exhs. 1-4. Each return noted the specific day and time the warrant was served and executed and described the "inventory" or "property taken" as "Precision location information for [phone number searched]" or "Cell Site Simulator Information for [phone number searched]." *See id.* Notwithstanding Reeves' assertions to the contrary, the search warrant returns appear to comply with the requirements of Rule 41(f)(1)(B) related to the seizure of electronically stored information.

Even if the search warrant returns did not comply with the letter of Rule 41, the evidence before this Court does not justify suppression. "A violation of Rule 41 warrants exclusion only when (1) the violation is of constitutional magnitude; (2) the defendant is prejudiced in that the search would not have taken place or would not have been as intrusive; or (3) there is evidence of an intentional and deliberate or reckless disregard for the rule." *Id.* (*citing United States v. Freeman*, 897 F.2d 346, 350 (8th Cir. 1990)). *See also United States v. Nyah*, 928 F.3d 695, 700 (8th Cir. 2019) ("Except when there is a constitutional infirmity, noncompliance with Rule 41 justifies exclusion of evidence 'only if a defendant is prejudiced or if reckless disregard to proper procedure is evident.'") (*quoting United States v. Spencer*, 439 F.3d 905, 913 (8th Cir. 2006)).

This Court finds no constitutional infirmity with the cell-site simulator warrant or the return. The return complies in form or substance with the requirements of the Rule. Even if the returns did not technically comply with the requirements of Rule 41, there is no evidence from which it could reasonably be inferred that Agent Muench acted in reckless or willful disregard to proper procedure. Nor did Reeves offer any evidence at the hearing or in his written submissions to support the argument that he has suffered any real prejudice. To the contrary, the record before this Court, including statements by Reeves himself, suggests that Reeves has been provided with voluminous discovery in this matter.

In sum, Reeves' motion to suppress because of non-compliant warrant returns is not supported by either the law or the facts and should be denied.

### 5. COMPLIANCE WITH "NECESSITY" REQUIREMENTS

Finally, Reeves argues the location evidence should be suppressed because the warrants failed to satisfy the "necessity" requirement under 18 U.S.C. §2518, which governs Title III wiretaps. *See* Docs. 333, at p. 10-11 and Doc. 345, at p. 5-6. Under § 2518(1)(c), each application for a wiretap authorization must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." *See United States v. Turner,* 781 F.3d 374, 382 (8th Cir. 2015) (quoting 18 U.S.C. § 2518(1)(c)). Section 2518(3)(c) similarly requires that in issuing a wiretap authorization order, the district court must determine whether "normal investigative procedures have been tried and have failed or reasonably appear unlikely to succeed if tried or to be too dangerous." *See United States v. West,* 589 F.3d 936, 939 (8th Cir. 2009) (quoting 18 U.S.C. § 2518(1)(c)). Together, these sections make up the necessity requirement for granting an order to receive wire intercepts from a phone.

The necessity requirement recognizes the well-established rule that wiretaps should not be "routinely used as the initial step in an investigation." *Turner,* 781 F.3d at 383. The Eighth Circuit has interpreted the necessity requirement to "restrict

wiretaps to situations in which they are necessary as well as reasonable, but not to require the government to show the exhaustion of specific or all possible investigative techniques before wiretap orders could be issued." *United States v. Thompson,* 690 F.3d 977, 986 (8th Cir. 2012) (internal quotations omitted) (quoting *United States v. Daly,* 535 F.2d 434, 438 (8th Cir. 1976)). For example, "[i]f law enforcement officers are able to establish that conventional investigatory techniques have not been successful in exposing the full extent of [a] conspiracy and the identity of each co-conspirator, the necessity requirement is satisfied." *Turner,* 781 F.3d at 382. Whether the statutory requirement is met is a question of fact to be determined by the issuing judge "in a commonsense manner." *Id.*

As the United States accurately noted in its response, Reeves cannot avail himself of the necessity requirement because the warrants at issue did not authorize the use of Title III wiretaps. Each of the relevant location data warrant applications clearly state that agents are not seeking the contents of any communications, written or otherwise. The record before this Court makes equally clear that no such interceptions were authorized or conducted pursuant to the PLW or CSS warrants. To the extent that Reeves is urging this Court to apply a necessity requirement to the PLW and CSS warrants at issue in this case, he has failed to cite any legal authority to support that proposition and the Court is unaware of any such authority. Earlier in this Memorandum Opinion, the Court evaluated the PLW and

CSS warrants at issue in this case pursuant to requirements flowing from Fed. R. Crim. P. 41 and the Fourth Amendment. The Court is not aware of any legal basis for imposing requirements that are greater than, or otherwise different from those requirements already addressed in this Memorandum Opinion. For these reasons, Reeves' argument that location data must be suppressed because agents failed to satisfy the "necessity" requirement fails.

For the reasons stated above, Reeves' motion to suppress location data and all evidence derived from that data should be denied.

## V.     MOTION TO SUPPRESS POST-ARREST STATEMENT (DOC. 334)

Reeves moves for suppression of statements he made following his arrest on January 14, 2020. (Doc. 334). Reeves asserts two independent grounds for suppression: (1) Reeves' rights pursuant to *Miranda v. Arizona* were violated and (2) Reeves' custodial statements were non-voluntary and the result of undue coercion. *Id.* Based upon the following factual findings and after carefully considering the applicable law, I find Reeves' motion lacks merit and should be denied for the reasons discussed below.

### A. FACTUAL FINDINGS

The following factual findings are based upon (i) the testimony of Agent Muench at the evidentiary hearing, which I found to be credible, together with

(ii) documentary and digital evidence submitted at the hearing, and (iii) all reasonable inferences derived from both testimonial and documentary evidence.

As a result of the ATF investigation discussed in the preceding section of this Memorandum Opinion, on January 9, 2020, a grand jury sitting in the Eastern District of Missouri returned an indictment against Reeves and others. The Court issued an arrest warrant, and, on January 14, 2020, a law enforcement team that included Agent Muench executed the arrest warrant.

On January 14, 2020, Reeves was arrested inside his residence without incident. Officers conducted a consensual search of Reeves' residence and seized, among other things, an apple iPhone that was subsequently forensically searched pursuant to a separate search warrant. *See* Govt. Ex. 5.

After his arrest, Reeves was transported to the ATF office by Agent Muench and other agents.[9] At the ATF office, Reeves was placed into an interview room and interviewed by Agents Muench and Brock Gale. The interview was audio recorded and later transcribed. *See* Govt. Exs. 6 & 6A. Before Reeves was interviewed, the agents advised him of his *Miranda* rights. Reeves acknowledged that he understood his rights, by stating so verbally and by initialing an Advice-of-

---

[9] At the evidentiary hearing, the parties stipulated on the record that to the extent Reeves made any statements while being transported to the ATF office, those statements lack any evidentiary value and are not at issue. As such, the Court did not hear evidence of, or reach any conclusions about, the admissibility of any statements Reeves may have made prior to arriving at the ATF office.

Rights form presented to him by the agents. *See* Govt. Ex. 7.  Reeves also verbally waived his rights and to speak with agents without a lawyer present and then acknowledged the waiver by signing the waiver portion of the form. *See id.*

Except for appearing to be a bit tired, Reeves did not appear to be intoxicated or impaired in any way during the interview. He was not threatened, intimidated, or made any promises as inducement to waive his rights. Reeves appeared to understand the questions asked; he answered some questions but at times avoided answering others. At no time did Reeves invoke his right to have an attorney present or otherwise withdraw his consent to be interviewed. Reeves, who had a history of prior arrests, acknowledged that he was familiar with his rights.

### B. CONCLUSIONS OF LAW

Under the Fifth Amendment, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. In *Miranda v. Arizona*, 384 U.S. 436, 448-450, 455 (1966), the Supreme Court recognized that custodial interrogations have the potential to undermine the privilege conferred by the Fifth Amendment against self-incrimination by possibly exposing a suspect to physical or psychological coercion. To guard against such coercion, the Court established a prophylactic procedural mechanism that requires a suspect to receive a warning before any custodial interrogation begins. *Id.* at 444. Unless suspects are

warned of their Fifth Amendment rights, any pretrial statements elicited from them are inadmissible at trial. *Id.* at 492.

The protections set forth by the United States Supreme Court in *Miranda* are triggered only when a defendant is both in custody and being interrogated. *United States v. Hatten*, 68 F.3d 257, 261 (8th Cir. 1995). Based on the foregoing factual findings, the *Miranda* protections were triggered. Reeves was arrested on January 14, 2020, pursuant to an arrest warrant predicated on an indictment by a federal grand jury that found probable cause to believe Reeves committed the crimes alleged in the indictment. Following his arrest, Reeves was transported to the ATF office and interrogated by Agent Muench and another agent.

Based on the foregoing factual findings, Reeves' post-arrest statements were audio-recorded and made after he was advised of his *Miranda* rights. As such, suppression is warranted only if Reeves' post-*Miranda* statements were involuntary. It is well-established that the privilege against self-incrimination can be waived. *Maryland v. Shatzer*, 559 U.S. 98, 104 (2010). To establish a valid waiver, the Government must demonstrate by a preponderance of the evidence that "the waiver was knowing, intelligent, and voluntary[.]" *Id.* The standard for determining the voluntariness of either a waiver of *Miranda* rights and/or a statement is the same. *Colorado v. Connelly,* 479 U.S. 157, 169-70 (1986). "A statement is involuntary when it was extracted by threats, violence, or express or

implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *United States v. Boslau,* 632 F.3d 422, 428 (8th Cir. 2011) (quoting *United States v. LeBrun,* 363 F.3d 715, 724 (8th Cir. 2004)).

This determination must be made by looking at the totality of the circumstances, including both "the conduct of the officers and the characteristics of the accused." *LeBrun*, 363 F.3d at 724. Factors include, among other things, "the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." *Boslau*, 632 F.3d at 428 (quoting *Sheets v. Butera,* 389 F.3d 772, 779 (8th Cir. 2004)).

Although "[t]he government bears the burden of persuasion and must prove by a preponderance of the evidence that the challenged statements were voluntary," *LeBrun,* 363 F.3d at 724, "[c]ases in which a defendant can make a colorable argument that a self- incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare." *Berkemer v. McCarty,* 468 U.S. 420, 423 (1984). "The fact that such warnings were given weighs in favor of a voluntariness finding." *United States v. Mendoza,* 85 F.3d 1347, 1350 (8th Cir. 1996).

Based on the factual findings, there is no credible evidence to suggest that Reeves' post-*Miranda* statements were involuntary or coerced. Specifically, the evidence demonstrates that Agent Muench advised Reeves of his rights by reading them from an Advice-of-Rights form. Reeves acknowledged that he understood his rights by stating so verbally and by initialing an Advice-of-Rights form presented to him by the agents. *See* Govt. Ex. 7.  Reeves also verbally waived his rights on the audio recording and agreed to speak with agents without a lawyer present and then acknowledged the waiver by signing the waiver portion of the form. *See id.*

  Agent Muench testified, credibly, about his interactions with Reeves. That testimony, which was corroborated by the audio recording, established that after advising Reeves of his *Miranda* rights, the agents did not threaten or intimidate Reeves in any way; Reeves did not appear to be intoxicated or impaired; the agents did not threaten or intimidate Reeves; the agents did not  make Reeves any promises to induce him to waive his rights and speak with them. Agent Muench also credibly testified that at no time did Reeves invoke his right to have an attorney present or otherwise withdraw his consent to be interviewed. Reeves, who had a history of prior arrests, acknowledged that he was familiar with his rights. In sum, there is no evidence that the agents engaged in any strategies or strong-arm tactics and/or dragged-out Reeves' questioning such that his will was overborne.

For all the foregoing reasons, Reeves' motion to suppress statements should be denied.

Dated: March 27, 2023.

 

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE