UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )  Case No. 4:20-cr-00022-1-MTS |
| DEOMAN REEVES, | ) ) ) |
| Defendant. | ) ) ) ) |

**MEMORANDUM AND ORDER**

A grand jury returned a superseding indictment on December 23, 2020, charging Defendant Deoman Reeves, and three co-defendants, with offenses related to fentanyl trafficking, including possession of a firearm in furtherance of drug trafficking resulting in death (Count 14). Defendant filed objections to some of the factual findings made by Chief United States Magistrate Judge Shirley Padmore Mensah in her Report and Recommendation ("Recommendation") to the Court. Doc. [358]. After a de novo review of the entire record, the Court will overrule Defendant's objections to Judge Mensah's factual findings and adopt and incorporate Judge Mensah's Report and Recommendation.

**I.   Background**

Pending before the Court are Defendant's motions: (1) to sever count 14, (2) to suppress any and all location data, (3) to suppress statements, (4) for in camera review of purported *Jencks Act* material, and (5) for written proffer and pre-trial determination of admissibility of co-conspirator's statements. The Court referred Defendant's motions to Judge Mensah. *See* 28 U.S.C. § 636(b). After an evidentiary hearing[1] and taking matters under submission, Judge Mensah issued a Report and

---

[1] Evidence was heard regarding the motion to suppress location data and motion to suppress statements. All other motions were submitted on the pleadings.

1

Recommendation recommending denial of the motions. Defendant filed objections to specific factual findings in the Recommendation, Doc. [375], and the United States filed a Response, Doc. [381]. The matter is now ripe for ruling.

## II.     Standard

When a party objects to a magistrate judge's report and recommendation, the district judge must conduct a de novo review of the portions of the report, findings, or recommendations to which the party objected. *See* 28 U.S.C. § 636(b)(1)(c) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (citing 28 U.S.C. § 636(b)(1)). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). In making its de novo determination, the Court reviewed the entire record, including all exhibits and the transcript of the evidentiary hearing held on December 19, 2022.

## III.     Discussion

Judge Mensah set out all the relevant facts of the case for the determination of Defendant's motions. At an evidentiary hearing on Defendant's suppression motions, Special Agent Andrew Muench, of the Bureau of Alcohol Tobacco, Firearms and Explosives ("ATF"), testified regarding the circumstances surrounding Defendant's post-arrest statement and each of the warrant applications and warrants challenged by Defendant. The United States admitted nine exhibits into evidence at the hearing, including the warrants and supporting materials challenged by Defendant. Defendant did not offer any additional evidence but cross-examined Agent Muench.

Defendant filed objections regarding his Motion to Suppress (1) Any and All Location Data of

(314) 369-0583 and (2) Any and All Location Data of (314) 899-3855. Doc. [375]. Defendant objects to some of the factual findings in the Recommendation regarding the October 11, 2019 application for a warrant and court order requiring Sprint and other telecommunications service providers to disclose precision location information, cell tower records and other telecommunication data for cell phone number (314) 899-3855. The application included an affidavit submitted by Agent Muench. Defendant's objections assert that Agent Muench's affidavit did not adequately support Judge Mensah's factual findings that: (a) "Among other things, the affidavit described ATF's investigation into a shooting that occurred in University City on September 26, 2019, in which Reeves was identified as the shooter by eyewitnesses." *See* Doc. [358] at 19; (b) "The affidavit also described how Reeves contacted police using the target telephone to find out what law enforcement knew about the shooting." *Id*. at 19-20; and (c) "The affidavit also detailed the steps investigators later took to confirm that Reeves owned and was actively using the target phone." *Id*. at 20.

When reviewing the sufficiency of the basis for the issuance of a search warrant under the Fourth Amendment, the Court must determine whether the issuing judge had a substantial basis for concluding that probable cause existed for the issuance of the warrant. *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). When the judge relies solely on the affidavit presented to him or her, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995) (quoting *United States v. Leichtling*, 684 F.2d 553, 555 (8th Cir. 1982)). Affidavits must be read in "a common sense and realistic fashion." *United States v. Cadwell*, 864 F.2d 71, 74 (8th Cir. 1988) (citation omitted). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. As

3

such, "[p]robable cause exists when, viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Bradley*, 924 F.3d 476, 480 (8th Cir. 2019) (quoting *United States v. Reed*, 921 F.3d 751, 757 (8th Cir. 2019)). The reviewing court must give "great deference to the probable cause determinations of the issuing judge." *Bradley*, 924 F.3d at 480 (quoting *United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016)).

    Defendant filed Objections to three specific factual findings in the Recommendation.

a. "Among other things, the affidavit described ATF's investigation into a shooting that occurred in University City on September 26, 2019, in which Reeves was identified as the shooter by eyewitnesses" Doc. [358] at 219.

    According to Special Agent Muench's affidavit, he spoke with Lieutenant Detectives Brian Isenberg ("Lt. Isenberg") and Shawn Whitley of the City of University City Police Department, ("UCPD") in reference to a shooting committed by Defendant on September 26, 2019. On that day, officers of the UCPD responded to the area of 7530 Shaftesbury for a call for shots fired. Officers spoke to witnesses who reported they heard gun shots but did not see anyone shooting.

    Later that day, a neighbor ("RM") told UCPD officers he was home at the time of the shooting and heard several gun shots in front of his residence on Shaftesbury. RM said after the shooting he looked outside and saw a black SUV traveling eastbound on Shaftesbury. Several bullet fragments were located inside RM's residence and bullet holes were located through a window and drapes near the front of the residence. An additional witness who wished to remain anonymous was located during a second area canvass. The witness advised they were on the front porch of their home on Shaftesbury at the time of the shooting and observed a black Jeep Cherokee drive west on Shaftesbury from Hanley and approach a blue truck, parked in front of 7530 Shaftesbury. Moments later, they heard approximately five gunshots. The Jeep then continued westbound on Shaftesbury, towards North & South Road. The blue truck drove eastbound on Shaftesbury toward Hanley. The witness said the

shooter in the Jeep was wearing a red hoodie.

On September 26, 2019, Chelsie Buchannon ("Buchannon") and Anthony Anderson ("Anderson") went to the UCPD to report they had been shot at while driving in the area of 7530 Shaftesbury. They were not injured, but their vehicle sustained bullet holes. Buchannon and Anderson each told UCPD detectives separately, that prior to being shot at, they were running errands and were at a Shell gas station near the location of the shooting. At the gas station they observed a man known to them as Deoman Reeves, in the driver's seat of a dark colored Dodge Durango parked at the gas station. A short time later they were driving eastbound in the 7500 block of Shaftesbury and noticed that same vehicle parked on the south side of the street. Buchannon said as they approached the vehicle, she recognized the vehicle as Defendant's due to the bullet holes along the driver's side that she had seen before. As Buchannon and Anderson drove past the vehicle, they heard gun fire. Anderson returned fire in self-defense. Buchannon and Anderson then drove to Delmar and Highway 170 and the blue Durango continued to follow them. They drove south on Highway 170 until the Durango was no longer in sight.

Buchannon and Anderson both separately identified Defendant in photographic lineups as the individual who shot at them. Buchannon and Anderson stated they were familiar with Defendant because of a prior incident approximately a year earlier when Defendant was driving in the same vehicle and shot at Anderson. That case was dropped because Anderson refused to testify against Defendant. While Buchannon was at the station, UCPD detectives obtained consent to search her vehicle. UCPD detectives located two bullet holes in the small rear passenger side window and recovered an ammunition slug from the driver's side interior pillar. Inside the vehicle, UCPD detectives located a black and brown Taurus G2C 9mm handgun with magazines and ammunition (belonging to Anderson). In addition, UCPD detectives located a spent 9mm shell casing and a red hoodie inside the vehicle.

Defendant claims there is no allegation of fact that Defendant shot at Buchannon and Anderson, or that Buchannon and Anderson saw or observed Defendant in the parked vehicle as they drove by and that "Buchannon and Anderson both separately identified Defendant in photographic lineups as the subject who shot at them" is a conclusory allegation of fact. Doc. [375] at 3, 4.

b. "The affidavit also described how Reeves contacted police using the target telephone to find out what law enforcement knew about the shooting." Doc. [381] at 19-20.

According to Agent Muench's affidavit, on September 27, 2019, at approximately 7 p.m., Lt. Isenberg received a telephone call (314-899-3855) from a subject who identified himself as Defendant. Defendant asked Lt. Isenberg several questions but would not give specific answers to questions that Lt. Isenberg asked him. Lt. Isenberg told Defendant he wanted to speak with him in person, but Defendant told Lt. Isenberg he was out of town. It was Lt. Isenberg's belief that Defendant was only attempting to obtain information related to the shooting and had no intention of meeting with Lt. Isenberg in person to discuss the matter.

Defendant claims "[t]here is no allegation of fact in Muench's affidavit laying a foundation that the person who called Lt. Isenberg on September 27, 2019 and 'identified himself as Deoman REEVES was in fact Defendant Deoman Reeves." Doc. [375] at 5.  Defendant maintains there is no allegation of fact in Muench's affidavit that Lt. Isenberg was familiar with or had heard Defendant Deoman Reeves's voice prior to September 27, 2019, so anyone could have called and identified themself as Defendant Deoman Reeves.

c. "The affidavit also detailed the steps investigators later took to confirm that Reeves owned and was actively using the target phone." Doc. [358] at 20.

According to Agent Muench's affidavit, "Lt. Isenberg has confirmed that the most recent cell phone number utilized by Deoman REEVES is (314) 899-3855, the subject cellular telephone. Public records checks were performed on (314) 899-3855 and the provider was identified as SPRINT." Doc. [375-1]. Agent Muench further stated that he conducted law enforcement, commercial, and open-

source database inquiries for information concerning Defendant's whereabouts. As part of these inquiries, he searched Crime Matrix, Accurint, other law enforcement databases, Facebook, and social networking websites. Based on Agent Muench's training and experience and inquiries he determined that (314) 899-3855 was being used as Defendant's primary contact number.

Defendant claims the statement, "Lt. Isenberg has confirmed that the most recent cell phone number utilized by Deoman REEVES is (314) 899-3855, the subject cellular telephone" located in Paragraph 16 of Agent Muench's affidavit and Paragraph 18 of Agent Muench's affidavit contain conclusory allegations of fact.[2]

Upon review, the Court finds that Judge Mensah properly paid great deference to the probable cause determination of the issuing judge and found that the issuing judge had a substantial basis for concluding that probable cause existed for the issuance of the warrant. As discussed in Judge Mensah's Recommendation, the issuing judge properly examined the information provided within the four corners of the written, sworn, affidavit provided by Agent Muench in support of the October 11, 2019, warrant for cell phone number (314) 899-3855. Judge Mensah also found Agent Muench's testimony at the evidentiary hearing was credible and that the issuing judge appropriately relied on Agent Muench's personal observations, investigative training, and substantial law enforcement experience in establishing the reliability of his opinion. The affidavit established probable cause that: (1) Reeves was a convicted felon; (2) Reeves was a suspect in a shooting, where he was identified by two victims, his

---

[2] "In furtherance of the investigation, your affiant conducted law enforcement, commercial, and open source database inquiries for information concerning Deoman REEVES' whereabouts. As part of open source inquiries, your affiant conducted searches of Crime Matrix and Facebook social networking websites looking for profiles and information on Deoman REEVES. As a part of those searches, your affiant identified and determined that the subject cellular telephone, with phone number (314) 899-3855 has been utilized on several occasions by Deoman REEVES. Several inquiries through Crime-Matrix, Accurint, and Facebook and various law enforcement database inquires show Deoman REEVES using this number as his primary number as recently as September 18, 2019. This number is being used as REEVES, primary contact number. Your affiant believes that monitoring and tracking the subject cellular telephone, with phone number (314) 899-3855, would be the most expedient method to locate REEVES. The monitoring of cellular data, as well as the activation of precision location information, will permit investigators to ascertain who REEVES is communicating with, as well as determine REEVES' whereabouts. This information is believed to be the most efficacious in locating REEVES."

vehicle was described by witnesses, and his cousin was stopped by police operating Defendant's vehicle, which contained a firearm and had bullet holes in the vehicle's driver's door as described by the witnesses; (3) A person who identified themselves as Deoman Reeves called the University City Police using phone number (314) 899-3855; (4) That person asked questions and had a conversation with Lt. Isenberg about the shooting; and (5) commercial, open source database inquiries, Crime Matrix inquiries and social media searches confirmed that Reeves was using phone number (314) 899-3855 as his primary contact number. Affidavits must be read in "a common-sense and realistic fashion." *United States v. Cal\dwell*, 864 F.2d at 74 (citation omitted). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates,* 462 U.S. at 238. Judge Mensah's factual findings accurately and adequately outlined the information provided in Agent Muench's affidavit. That fact is not changed by Defendant setting out in isolation three sentences from the Recommendation that are not meant to be read independently of the other factual findings, but rather supported by the totality of the factual circumstances set out in the Recommendation.

### IV. Conclusion

**IT IS HEREBY ORDERED** that the Report and Recommendation of United States Magistrate Judge Mensah, Doc. [358], is **SUSTAINED, ADOPTED, AND INCORPORATED**.

**IT IS FURTHER ORDERED** that Defendant's Objections to the Report and Recommendation, Doc. [375], are **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Sever Count Fourteen, Doc. [332], is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress Any and All Location

8

Data, Doc. [333], is **DENIED**.

    **IT IS FINALLY ORDERED** that Defendant's Motion to Suppress Statement, Doc. [334], is **DENIED**.

    Dated this 12th day of June, 2023

                                                                     MATTHEW T. SCHELP
                                                                       UNITED STATES DISTRICT JUDGE